**UNITED STATES**

v.

**William Charles HANNON, 176 58 9214, Fireman Recruit (E–1), U.S. Naval Reserve.**

**NMCM 84 1047.**

U.S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 1 Nov. 1983.

Decided 16 Nov. 1984.

LTCOL M.W. Lucas, USMC, Appellate Defense Counsel.

LCDR Cynthia J. Clemens, JAGC, USN, Appellate Defense Counsel.

LT Brian Saunders, JAGC, USNR, Appellate Government Counsel.

Before EOFF, C.J., and MAY and RAPP, JJ.

PER CURIAM:

On 1 November 1983, appellant was found guilty at a special court-martial, military judge sitting alone, of five periods of unauthorized absence in violation of Article 86, Uniform Code of Military Justice

(UCMJ) 10 U.S.C. § 886. He was sentenced to be confined at hard labor for 5 months, to forfeit $380.00 pay per month for 6 months, and to be discharged from the naval service with a bad conduct discharge. The convening authority approved the sentence, but suspended one month of the confinement at hard labor. The supervisory authority approved the sentence without modification.

Appellant has raised several issues in his assignments of error, his petition for clemency, and his *Goode* response. We find no merit in the assignments of error but will address each briefly.

### Statement of Facts

The three Assignments of Error in this case all stem from one course of action taken by the trial counsel, Lieutenant J, in conjunction with another trial counsel, not detailed to this case, Lieutenant G. The appellant's detailed defense counsel, Lieutenant S, objected to this conduct at trial on the grounds that it was ethically improper, and it thus became the subject of pretrial motions.

The evidence presented on these motions established the following facts. In December of 1982, the appellant was represented by Lieutenant G at a special court-martial. Prior to that trial, Lieutenant G had negotiated a deferral of sentence for the appellant to last through the holidays. Lieutenant G had no further contact with the appellant after that trial. It was during the deferral period that the appellant began an unauthorized absence which is the basis for the original Charge in the case *sub judice.*

Lieutenant G was neither detailed as a defense counsel nor as a trial counsel in the instant case. Nor was she requested as an individual military counsel by the appellant. In fact, there had been no contact between Lieutenant G and the appellant since his trial in December, 1982.

On some unspecified date or dates prior to appellant's court-martial *sub judice,* Lieutenant J borrowed topical files from Lieutenant G concerning the issues of "illegal pretrial confinement" and "witness requests." Both issues were also discussed verbally between the two counsel. The topical files were maintained by Lieutenant G totally apart and separate from her case files, both defense and prosecution. This separation of file systems was, as Lieutenant G stated, to avoid any question of possibly betraying confidences protected by the attorney/client privilege. Lieutenant G shared her topical files with both defense and government counsel in her office.

Lieutenant G testified under oath that the sharing of this legal information was with the knowledge that Lieutenant J was working on the case against the appellant in utilizing this information. Lieutenant G also testified that she, at no time, either gave appellant's case file to Lieutenant J or divulged any information to Lieutenant J obtained during her attorney/client relationship with the appellant.

### I

The first order of business is to analyze Lieutenant G's actions as they pertain to this case. Appellant's assignments of error are based on the supposition that Lieutenant G's behavior was legally and ethically improper.

The *Manual for Courts-Martial, 1969 (Rev.)* (MCM) prohibits a person who has acted in defense of an accused to subsequently act as a prosecutor in proceedings involving the same general matter. Paragraphs 6*a* and 61*e*, MCM. This same proscription is contained in Rule 1.9(a) of the *Model Rules of Professional Conduct* (August 1983), and alluded to in Canons 6 and 9 of the former *Code of Professional Responsibility* of the American Bar Association. Model Rule 1.9(a) is further explained in the "Comments":

... a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client.

As to the reassignment of military lawyers between defense and prosecution functions, the "Comments" continue:

> The underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question.

All of the standards set out above proscribe behavior of an attorney who has an attorney/client relationship with a client as to a specific matter or one closely related thereto. There are no proscriptions on attorneys who have a former attorney/client relationship with an accused and act in matters totally unrelated to that previous matter.

■ In the case *sub judice*, the appellant faced charges of unauthorized absence, all of which began subsequent to the court-martial in which Lieutenant G represented him, and subsequent to all contact between Lieutenant G and the appellant. The fact that the offenses were of the same type in the previous court-martial as those offenses presently under review does not bear on the fact that the new offenses entailed a completely separate matter, with which Lieutenant G had no connection. Lieutenant G, then, was not barred, simply because of her previous attorney/client relationship with appellant, from forever acting against the appellant's interests, but only from acting against his interests in matters connected with his previous court-martial and their previous contacts. *United States v. Turley*, 8 U.S.C.M.A. 262, 24 C.M.R. 72 (1957); *United States v. Diaz*, 9 M.J. 691 (NCMR 1980).

Consequently, trial defense counsel's motion for a mistrial, based on paragraph 56*e*, MCM, as well as his motion to disqualify Lieutenant J as the trial counsel, based on Article 27(a), UCMJ, 10 U.S.C. § 827(a), were properly denied.

While we have found no actual legal or ethical improprieties in this case in Lieutenant J's consultations with Lieutenant G, and we find no fault in their actions, we do wish to comment further on them. It is imperative that all trial counsel understand and appreciate that "th[e attorney-client] privilege—one of the oldest and soundest known to the common law—exists for the purpose of providing a client with assurances that he may disclose all relevant facts to his attorney safe from fear that his confidences will return to haunt him." *United States v. Green*, 5 U.S.C.M.A. 610, 613, 18 C.M.R. 234, 237 (1955), citing *United States v. Marelli*, 4 U.S.C.M.A. 276, 15 C.M.R. 276 (1954); *United States v. Berry*, 1 M.J. 651 (NCMR 1975). With that knowledge in mind, then, ". . . activities in the premises not concerned with the maintenance of that relation must be measured jealously, and with the highest degree of care." *United States v. Berry*, at 652–653, citing *United States v. McCluskey*, 6 U.S.C.M.A. 545, 20 C.M.R. 261 (1955).

■ In the military situation, it is not uncommon for a former defense counsel to see a previous client once again roaming the halls of military justice. It is that counsel's responsibility to avoid any participation in the current prosecution if the matter in the previous case and the current case appear to be related in some manner. It is also that counsel's responsibility to refrain from divulging or utilizing any confidential information in the current prosecution. Such participation would definitely jeopardize the fairness of the trial and call into question the ethics of that counsel's conduct. In the delicately balanced system of military justice, where potential for such situations is always present due to regular office assignment rotation, counsel sensitivity to this issue is particularly important. It is not enough, however, for the military lawyer to avoid any actual conflicts of interest, but also to avoid even the slightest appearance of impropriety.

## II

■ The trial defense counsel also moved that the military judge compel Lieutenant G to hand over to the defense counsel her case file concerning appellant's previous court-martial. The defense counsel gave no indication that appellant was ques-

tioning Lieutenant G's competence at that previous hearing, and gave no other valid reason which mandated the necessity for the court to order Lieutenant G to turn over her files. It is clear that the trial defense counsel, representing the appellant on a completely separate set of offenses, was seeking to obtain Lieutenant G's work-product, as a third party. *United States v. Dupas*, 14 M.J. 28 (CMA 1982). Lieutenant G stated that she would hand over the file if she received a written waiver from the appellant. The obligation to a client with whom an attorney/client relationship has been developed is so strong, it is understandable that Lieutenant G would require such a written waiver. No written waiver was submitted by appellant, nor was an explanation proffered. The defense counsel's motion was properly denied.

### III

 This Court also wishes to address the apparent absence of an explanation, on the record, of forum rights to the appellant. The military judge did question the appellant concerning his request for military judge alone, specifically asking the appellant if he had thoroughly discussed the request with his defense counsel, to which the appellant answered affirmatively. The trial defense counsel did not question the military judge's inquiry nor his acceptance of the request. Although more extensive inquiry and explanation could have been made by the military judge, it is our opinion that he at least assured himself the appellant's request for trial by military judge alone was understandingly made. *United States v. Barnes*, 8 M.J. 115 (CMA 1979); *United States v. Parkes*, 5 M.J. 489 (CMA 1978). Also, by trial defense counsel's silence, any right to object to the procedure used by the military judge was waived. *United States v. Jenkins*, 20 U.S. C.M.A. 112, 42 C.M.R. 304 (1970).

Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed.