**UNITED STATES**

v.

**Airman First Class Richard D. FOWLER, FR 253–15–2271, United States Air Force.**

**ACM S24584.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 21 Dec. 1977.

Decided 23 Aug. 1978.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips, Major Gary C. Smallridge and Major Marc G. Denkinger, USAFR.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a special court-martial, with members, the accused was convicted, consonant with his pleas, of ten specifications of making and uttering worthless checks (eight with intent to defraud and two with intent to deceive), in violation of Article 123a of the Uniform Code of Military Justice, 10 U.S.C. § 923a. The approved sentence is a bad conduct discharge, confinement at hard labor for six months, forfeiture of $265.00 per month for six months and reduction to airman basic.

On appeal, appellate defense counsel assert that the trial counsel was disqualified from participating in the court-martial because he earlier rendered legal assistance to the accused concerning the same matter for which he was tried.

At the trial which was held on 21 December 1977, the appointed trial counsel, Captain W, announced for the military judge and the record that he had not acted as a member of the defense in the case or as counsel for the accused at a pretrial investigation or other proceedings involving the same general matter. Article 27(a), Code, 10 U.S.C. § 827(a), supra; Air Force pamphlet 111–6, 19 April 1976; Manual for Courts-Martial, 1969 (Rev.), paragraph 61e. At no time during the proceeding did the accused voice an objection to the trial counsel's participation.

In a post-trial affidavit accepted by this court,[1] the accused avers that on or about 5 August 1977, prior to the date charges were preferred, he received legal assistance from Captain W. In his affidavit, the accused states that after being informed that a number of checks he had written had been returned for insufficient funds, he went to the Rhein-Main Air Base legal office for advice and was given an appointment to see Captain W. He continues that he "discussed the situation with Captain W and explained the matter in detail with him and he later on advised me just to go ahead and pay off the debts."

In response to the accused's affidavit, appellate government counsel have filed an affidavit executed by Captain W. In it Captain W admits that the accused on one occasion prior to trial visited his office for legal assistance concerning his overdrawn checking account. Although he has no independent recollection of his meeting with the accused, Captain W concedes that an office legal assistance record (AF Form 1175) reflects that he saw the accused at his office on 10 August 1977. Captain W states that on the front of the record he wrote, "AAFES–$400; NCO Club 50." On the other side he indicated, "over drawn account/referred Captain [L]."[2]

Captain W's affidavit continues that prior to trial he and the accused's counsel, Captain L, discussed the fact that the accused had visited him for legal assistance concerning his overdrawn checking account. He states he informed Captain L that in spite of the legal assistance record he did not remember ever seeing his client. Captain W explains that his office screens legal assistance problems closely in an effort to insure that potential military justice problems are referred to the area defense counsel. He states that during his two years at Rhein-Main he recalls only two or three times when he has referred legal assistance clients in that manner. On each such occasion, he says, he terminated the interview immediately upon ascertaining the general nature of the problem, rendered no advice, and referred the individual to the defense office. Captain W emphasizes that as his normal duty is to serve as trial counsel, he

---

1. See *United States v. Ferguson*, 5 U.S.C.M.A. 68, 17 C.M.R. 68 (1954); *United States v. Moore*, 27 C.M.R. 613 (1958).

2. Captain L was the area defense counsel who subsequently represented the accused during trial.

is extremely aware of possible conflicts with legal assistance clients. He states he at no time developed an attorney-client relationship with the accused, nor did the accused provide him with any information which could be considered sensitive in an adversarial court-martial proceeding. He concludes that Captain L discussed the matter with his client prior to trial and subsequently informed him there was no legal, procedural or tactical disadvantage to the accused in consequence of their 10 August 1977 meeting.

Notwithstanding the purported defense acquiescence to Captain W's participation, the issue we must resolve is whether Captain W's pre-trial consultation with the accused disqualified him from serving as trial counsel during trial pursuant to Article 27(a), Code, supra, which provides, in pertinent part, that no person who has acted for the defense may subsequently act in the same case for the prosecution.

■ Initially, we must reject the appellate government position that the defense waived the issue by choosing not to object to the trial counsel's participation. See *United States v. Webb*, 10 U.S.C.M.A. 422, 27 C.M.R. 496 (1959); *United States v. Mundy*, 2 U.S.C.M.A. 500, 9 C.M.R. 130 (1953). Although in different circumstances we might agree, see e. g., *United States v. Wood*, 18 U.S.C.M.A. 291, 40 C.M.R. 3 (1969); *United States v. Doctor*, 7 U.S.C.M.A. 126, 21 C.M.R. 252 (1956); *United States v. Fisher*, 4 U.S.C.M.A. 152, 15 C.M.R. 152 (1954), we are loathe to invoke the doctrine of waiver as to a claimed error which could result in a manifest miscarriage of justice or otherwise seriously affect the fairness or integrity of courts-martial. *United States v. Stringer*, 4 U.S.C.M.A. 494, 16 C.M.R. 68 (1954). In the words of the United States Court of Military Appeals in *Stringer*, concerning this same issue:

> While a due regard for the proper and orderly administration of justice constrains us to emphasize the duty of counsel to make seasonable objection at the trial, it is clear that we may consider error first urged on appeal which is al-

leged to violate due process of law and deny to an accused the substance of a fair trial.

16 C.M.R. at 72–73.

■ Having carefully considered the affidavits submitted by the parties, and despite the general denial by Captain W, we find that an attorney-client relationship was created between the prosecutor and the accused. The accused's statement that he discussed his returned checks with Captain W in detail and the latter advised him to make restitution on them stands unrefuted in the trial counsel's affidavit. Captain W's statement of his standing "hands-off" policy respecting legal assistance clients who disclose potential military justice problems simply does not respond to the accused's specific recollection of their meeting. See *United States v. Collier*, 20 U.S.C.M.A. 261, 43 C.M.R. 101, 104 (1971).

We further find there is a substantial likelihood that the insufficient fund checks discussed with Captain W were among those which were the subject of the charges at trial. The timing and circumstances of the conference certainly suggests such to be the case. The meeting was subsequent to the dates alleged in the check offenses; and Captain W's notations on the legal assistance record of the payees and amounts of the checks discussed closely parallels those particulars of the specifications.

■ The protection of the attorney-client relationship is one of the most well-settled and rigorously enforced rules in the law. *United States v. McCluskey*, 6 U.S.C.M.A. 545, 20 C.M.R. 261 (1955); *United States v. Sulin*, 44 C.M.R. 624 (A.F.C.M.R.1971). The creation of the relationship does not forever thereafter preclude an attorney from taking a position adverse to his former client. However, and as indicated in the prohibitory language of Article 27(a), Code, supra, an attorney must never represent conflicting interests, nor permit himself to be placed in such a position that he is required to choose between such interests. *United States v. Stringer; United States v. McKee*, 2 M.J. 981 (A.C.M.R.1976).

■ Although the question of the disqualification of prosecutors has arisen against such a variety of backgrounds that the solution in each case necessarily depends on its own particular facts and circumstances, this much is constant: an attorney is not permitted to prosecute an accused whom he has previously represented in the same or a related matter. Article 27(a), Code, supra; *United States v. Stringer*, supra; *United States v. Green*, 5 U.S.C. M.A. 610, 18 C.M.R. 234 (1955); *United States v. McKee*, supra; *United States v. Bryant*, 16 C.M.R. 747 (A.F.B.R.1954). This rule is so strictly enforced that an attorney is disqualified from prosecuting his former client in the same general matter even though while representing the client he acquired no information which could adversely affect him in the subsequent adverse action. *United States v. Green* and *United States v. McKee*, both supra. As so aptly said by the Court of Military Appeals in *United States v. Turley*, 8 U.S.C.M.A. 262, 24 C.M.R. 72, 75 (1957):

> An attorney, who has on a previous occasion represented or advised an accused person, must avoid the slightest suspicion, the very appearance, of assisting—little or much, directly or indirectly, consciously or unconsciously—in the prosecution of his erstwhile client, from whom he may have acquired private information.

Of further relevance to the issue is the Court's earlier caution that,

> doubts concerning equivocal or apparently inconsistent conduct on the part of the attorney must be resolved against him— that is, it must be regarded as having been antagonistic to the best interests of his client.

*United States v. McCluksey*, supra, at 266.

On the basis of the foregoing circumstances and principles, we are constrained to conclude that Captain W prosecuted the accused in contravention of the Article 27(a) injunction. Having so concluded, we must still determine whether the accused was harmed by such conduct. *United States v. McKee*, supra. In this evaluation, the crucial focus is on

> the possibility that the accused may be prejudiced by the presence of a personal interest in the outcome of the case on the part of the prosecutor, or the latter's possession of privileged information, or an intimate knowledge of the facts by reason of a professional relationship with the accused.

*United States v. Stringer*, supra, at 502, 16 C.M.R. at 76; *United States v. McKee*, supra.

■ Like the court in *McKee*, we cannot determine with any assurance whether the information the accused provided Captain W as to checks returned for insufficient funds was injurious to the accused's interests or provided any degree of guilty plea inducing leverage, subtle or otherwise, in consequence of Captain W's participation as trial counsel. Upon consideration of all factors, we must, therefore, conclude that the possibility of prejudice exists. Nothing more specific need be found, for in this area "refined calculations as to the precise degree of prejudice existing, or its probable effect on the trial, are not to be indulged." *United States v. Stringer*, supra, at 76.

It follows that the trial counsel should have, at a minimum, acquainted the military judge with the particulars of his pre-trial contact with the accused. Had he done so, the military judge could have fully explored the matter to determine whether he was, in fact, disqualified from participating in the trial. Manual for Courts-Martial, supra, paragraph 61e. Unfortunately, that procedure was not followed and the accused is now entitled to a new trial with a different trial counsel.[3] *United States v. Collier; United States v. Turley; United States v.*

---

**3.** We wish to emphasize that it is not our intent in this decision to question Captain W's good faith or moral integrity. His mistake lies in his failure to either recuse himself from participation in the case or to at least acquaint the military judge with the particulars of his pre-trial contact with the accused so as to provide the judge an opportunity to make necessary inquiry of all parties early in the trial. As is painfully evident, his failure to opt for either of those alternatives, but to rely instead on a pre-trial "understanding" between the parties, was an imprudent decision.

*McClusky; United States v. Green, United States v. McKee*, all supra.

The findings of guilty and the sentence are set aside and a rehearing may be ordered.

EARLY, Chief Judge, HERMAN and ARROWOOD, Judges, concur.